**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
**BUFFALO DIVISION**

| | |
|---|---|
| CHARLES YOUNG,       ) | CIVIL COMPLAINT |
|     Plaintiff,      ) | |
|               ) | |
| v.               ) | |
|               ) | Case No. 1:21-cv-234 |
| CAPITAL MANAGEMENT   ) | |
| HOLDINGS, LLC, and DEBT   ) | |
| MANAGEMENT PARTNERS, LLC,  ) | |
|               ) | **JURY DEMAND** |
|     Defendants.     ) | |

**COMPLAINT**

Now come CHARLES YOUNG ("Plaintiff"), complaining as to CAPITAL

MANAGEMENT HOLDINGS, LLC ("CMH") and DEBT MANAGEMENT PARTNERS,

LLC ("DMP" and, collectively, "Defendants"), as follows:

**JURISDICTION**

1.      Subject matter jurisdiction is conferred upon this Court by

28 U.S.C. § 1331, as the action arises under the laws of the United States.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant

resides in this District.

**PARTIES**

3.      Plaintiff is a natural person residing in Hennepin County, Minnesota.

4.      Defendant CMH is a New York limited liability company with its

principal place of business in this District.

[ 1 ]

5.     Defendant CMH is a third-party debt collector whose primary purpose is the collection of defaulted consumer accounts.

6.     Defendant DMP is a Delaware limited liability company with its principal place of business at 200 John James Audubon Parkway, Suite 304, Amherst, NY 14228. Defendant DMP is a purchaser of defaulted consumer accounts.

7.     Defendant DMP has, as its sole business purpose, the collection of those defaulted consumer accounts.

BACKGROUND

8.     Plaintiff obtained a payday loan from "the Cash Store" a/k/a "Cottonwood Financial."

9.     Plaintiff used the proceeds of this loan for personal and household purposes, such as paying his bills and buying groceries.

10.     Plaintiff did not use the proceeds of the loan for any business or commercial purpose.

11.     Upon information and belief, the amount of the loan was approximately $2,000.

12.     After the account went into default, the original creditor sold it. Defendant DMP purchased the account.

13.     Upon information and belief, Defendant DMP then hired Defendant CMH to collect upon the account.

14.     In the alternative, Defendant DMP sold the account to Defendant CMH while retaining control over the collection process.

[ 2 ]

15. Upon information and belief, the contract between Defendant DMP and Defendant CMH establishes a principal-agent relationship with DMP being the principal and CMH being the agent.

16. According to Defendant DMP's website, "[o]ur Chief Operating Officer is a 25 year veteran of the collection industry; he has overseen thousands of employees, managed direct placements from major banks, coordinated purchasing and liquidation for hedge funds, and has sat on the boards of numerous professional trade organizations. Overseeing all aspects of account management, he maintains consistency and quality control at every step of the process."

17. Upon information and belief, Defendant DMP retained the right to control Defendant CMH's collection activities, including (but not limited to) by doing the following:

    a. Reserving the right to repurchase any account that DMP determines is involved in pending or threatened litigation or that otherwise involves DMP's interests;

    b. Requiring CMH to maintain a compliance management system ("CMS") that meets DMP's standards;

    c. Reserving the right to "recall" any and all accounts affected by any failure on the part of CMH to maintain or utilize the CMS;

    d. Reserving the right to require CMH to immediately withdraw accounts placed with or sold to third party debt collection agencies;

e.  Requiring CMH to maintain recordings of its telephone calls with consumers for three years;

f.  Requiring CMH to notify DMP of consumer complaints and lawsuits; and

g.  Requiring CMH to include an identical CMS provision in any contract by which CMH sells accounts further downstream.

18.  Although Defendant DMP had the right to control Defendant CMH's actions, it failed to prevent Defendant CMH from taking the actions described in this Complaint.

19.  In fact, Defendant DMP almost exclusively hires third-party debt collectors that it knows regularly violate the FDCPA.

20.  On information, reference, and belief, Defendant DMP knew that Defendant CMH, specifically, regularly violates the FDCPA.

21.  Defendant DMP knew or should have known of the numerous complaints that consumers have lodged with the Consumer Financial Protection Bureau ("CFPB") regarding Defendant CMH, which also does business under the name "Elite Debt Brokers," such as:

a.  Contacting employer regarding debt and failing to disclose debt collector status.  (Complaint No. 3894909);

b.  Threatening to contact third parties and to personally serve a lawsuit it did not intend to bring.  (Complaint No. 3894947);

c.  Failing to verify debt when requested.  (Complaint No. 3865000);

22.     Defendant DMP has known or should have known, since at latest March of 2019, that Defendant CMH employs a clearly-violative script in all initial voicemails left for consumers.  A copy of this script is attached hereto as Exhibit 1.

23.     On information and belief, Defendant DMP prefers to hire debt collectors that it knows commit these types of FDCPA violations because this increases its return on investment.

24.     On or about February 11, 2021, Defendant CMH placed a call to Plaintiff.

25.     This call displayed on Plaintiff's caller ID as originating from the phone number "612-348-6000."

26.     While his phone was ringing, Plaintiff performed a Google search for the displayed number and was directed to the website for the Hennepin County District Court.

27.     Plaintiff does not ordinarily answer calls from unknown numbers, but he chose to answer Defendant CMH's call because it appeared to originate from a legitimate source.

28.     When Plaintiff answered the call, the caller introduced herself as "Stacy Davis" and stated that she was a process server in Hennepin County who was trying to locate him in order to serve him with papers at either his workplace or his home.

29.     Plaintiff informed the caller that he was at home, not at work.  When the caller read off what she believed was his home address, Plaintiff informed the caller that he had moved and no longer lived at that address.

30.     The caller then informed Plaintiff that she could not serve him at a new address, and she told Plaintiff that he needed to call "the company that filed."

31.     The caller also mentioned that she had already spoken with someone named Kim at Plaintiff's workplace.

32.     There are two persons named Kim employed at Plaintiff's workplace. One is an HR director, and the other is a business office director.

33.     The caller stated that she could work with Kim to set up service of Plaintiff at his workplace.

34.     Plaintiff later learned from his boss that the representative had in fact spoken with one of the Kims and had informed her of the existence of the debt.

35.     The caller's representation that she had called Plaintiff's employer caused Plaintiff substantial stress, worry, and embarrassment, including by inducing him to fear that further calls or even visits to his employer would be forthcoming.

36.     The caller then provided Plaintiff with the phone number of "the company that filed," namely 1-855-458-1678.  The caller also provided Plaintiff with a purported case number.  The caller identified the company that called only as "Global."

37.     "Global" and "Global First Group" are false names regularly employed by Defendant CMH.  On reference and belief, neither CMH nor anyone else has registered either as a business name or as a fictitious name in New York or in Minnesota.

38.     After this first call concluded, Plaintiff called the number the caller had provided.

[ 6 ]

39.     On that call, a representative of "Global"—meaning Defendant CMH—asked for his case number.  When Plaintiff provided it, the representative informed Plaintiff that "Global" had sent him papers concerning a debt of approximately $2,000.

40.     On information and belief, Defendant CMH never sent Plaintiff any papers concerning the debt.  Plaintiff has to date received no written communications from Defendant CMH or any other source concerning the debt.

41.     The representative also informed Plaintiff that because he had not made payments on the debt, "the party" had filed "fraud charges."

42.     Because the initial call had originated with the Hennepin County District Court, Plaintiff believed that "Global" had the ability to file criminal fraud charges.

43.     Plaintiff asked the representative "is there any way to resolve this issue?" The representative asked whether he could pay $1,800 to settle the debt.  Plaintiff stated that the most he could pay was $800.  The representative stated that he could settle the debt by paying $800 that day and $1,000 on the following Wednesday.

44.     Plaintiff asked whether, if he made those payments, "Global" could ask for a dismissal of the matter in court.  The representative answered yes.

45.     Plaintiff stated that in order to make the $800 payment, he would have to deposit cash at an ATM and asked whether he could call back to make the payment. The representative told him that he could not because, once the call ended, he would be served and "Global" would proceed in court.

46.     Plaintiff therefore remained on the line with the representative while he drove to an ATM and deposited sufficient cash.

47.     Plaintiff then provided the representative with his debit card number and the representative processed a payment of $800.

48.     The representative then said to make sure he made the $1,000 payment or the settlement would be negated and the charges would go forward.

49.     The call then ended.

50.     At no point during either call did anyone Plaintiff spoke to disclose that he was speaking to a debt collector or that any information collected would be used for a debt collection purpose.

51.     The $800 charge displayed on Plaintiff's bank statement as originating with "Global First Group."

52.     After the call ended, Plaintiff was able to collect his thoughts.  He performed internet research and realized that he had fallen for a "process server scam."

53.     Plaintiff worked with his bank to change his debit card number.  Plaintiff attempted to have the bank charge back the $800 as a fraudulent withdrawal, but he was informed he needed to report the fraud to the police first.

54.     Plaintiff attempted to report the fraud to the police, but he was told that he needed to first establish whether "Global First Group" was a legitimate debt collector.

55.     Plaintiff therefore called the Hennepin County District Court and learned that no case had been filed against him regarding a debt.

56.     Plaintiff therefore called The Cash Store and asked to whom they had sold his debt.  He was informed that his debt was sold to Defendant DMP.

57.     Plaintiff then learned from Defendant DMP's web portal that his account had been transferred to "Elite Debt Brokers," an alias or alter ego[1] of Defendant CMH, for collection.

58.     Plaintiff called the number provided for "Elite Debt Brokers" and informed them that "Global First Group" had pretended to be calling him from the Hennepin County District Court in order to trick him into paying, and that it had committed several other illegal acts.

59.     "Elite Debt Brokers" informed Plaintiff that it would "recall" Plaintiff's debt from "Global First Group" and would refund his payment.

60.     On information and belief, no recall was necessary because the two entities are one and the same.

61.     After a few days, the payment was refunded.  Plaintiff received, however, no compensation for the substantial time he expended in investigating his mistreatment, nor did he receive any compensation for the extreme worry and embarrassment to which Defendant CMH, as agent for Defendant DMP, exposed him.

62.     This action follows.

---

[1] If "Elite Debt Brokers" is the "Elite Debt Brokers, LLC" registered in Delaware, then Elite Debt Brokers, LLC is, on information and belief, functionally the same company as Defendant CMH.  The two entities, on information and belief, share identical boards of directors, the same officers, and the same employees, as well as bank accounts and insurance plans.  On information and belief, funds earned by either company are regularly used to pay the expenses of the other and are otherwise comingled and/or transferred between the companies without regard for consideration.

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

63.     Plaintiff realleges the paragraphs above as though fully set forth herein.

64.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA because he incurred a loans used to provide for his own everyday subsistence.

65.     Defendant CMH is a "debt collector" as defined by § 1692a(6) of the FDCPA because the principal purpose of its business is the collection of debts, and because it uses the instrumentalities of interstate commerce to do so.

66.     In the alternative, Defendant CMH, is a "debt collector" under § 1692(a)(6) because it regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

67.     Defendant DMP is a "debt collector" as defined by § 1692a(6) of the FDCPA because the principal purpose of its business is the collection of debts, and because it uses the instrumentalities of interstate commerce to do so.  Specifically, The sole purpose of DMP is to purchase portfolios of defaulted consumer debts and to facilitate and profit from the collection of those debts.

68.     Defendant CMH's actions directly violated the following provisions of the FDCPA:

   a.  § 1692c(b) by communicating regarding Plaintiff's debt with an individual employed by Plaintiff's employer, other than as permitted by § 1692b;

   b.  § 1692d(6) by placing a telephone call to Plaintiff without a meaningful disclosure of CMH's identity;

   c.  § 1692e(7) by falsely stating it had charged Plaintiff with criminal fraud;

d. § 1692e(5) and § 1692e(10) by falsely representing that CMH had brought suit against Plaintiff to secure repayment of the debt;

e. § 1692e(5), § 1692e(10), § 1692e(13) by falsely stating or threatening that it had sent and would continue sending someone to serve Plaintiff;

f. §§ 1692e(1), 1692e(10) and 1692e, generally, by employing the method known as "spoofing" to conceal the true origin of CMH's call to Plaintiff and to make it appear that the call originated from a court;

g. § 1692e(11) by failing to disclose in the initial communication that the call was from a debt collector; that the debt collector was attempting to collect a debt; and that any information obtained would be used for that purpose;

h. § 1692e(14) by using false names including "Global," "Global First Group," and "Elite Debt Brokers" in place of its true name; and

i. § 1692g(a) by failing to send any written notice to Plaintiff within five days of the initial communication containing the information specified in § 1692g(a)(3)–(5).

46. Defendant CMH is directly and/or vicariously liable for the actions of its employees.

47. Defendant DMP is liable under the FDCPA because it is a debt collector and is therefore responsible for Defendant CMH's actions taken on its behalf to collect its debts. *See Barbato v. Greystone All., LLC,* 916 F.3d 260, 261 (3d Cir. 2019) ("[A]n entity that otherwise meets the 'principal purpose' definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting."); *see also Mullery v. JTM*

[ 11 ]

*Capital Mgmt., Ltd. Liab. Co.*, No. 18-CV-549, 2019 U.S. Dist. LEXIS 83139, at \*9 (W.D.N.Y. May 16, 2019).

48.     Further, Defendant DMP is vicariously liable for Defendant CMH's actions under traditional agency principles, as Defendant DMP is the principal and Defendant CMH is the agent, and the latter's actions were taken within the scope of the agency relationship.

49.     Further, if CMH is not an agent of Defendant DMP, then DMP is directly liable for its own violation of the § 1692c(b) because it communicated, in connection with the collection of Plaintiff's debt, with Defendant CMH for a reason other than the collection of location information as permitted by § 1692b.  *See Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341 (11th Cir. 2021).

WHEREFORE, Plaintiff prays for judgment as follows:

    **a.**     Holding Defendants jointly and severally liable for violations of the FDCPA;

    **b.**     Awarding Plaintiff statutory damages of $1,000 as provided under 15 U.S.C. § 1692k(a)(2)(A);

    **c.**     Awarding Plaintiff actual damages as provided under 15 U.S.C. § 1692k(a)(1);

    **d.**     Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

    **e.**     Awarding Plaintiff the costs of this action;

    **f.**     Awarding any other relief as this Honorable Court deems appropriate.

[ 12 ]

**A TRIAL BY JURY IS DEMANDED.**

Dated:  May 29, 2021

By:  s/ Geoffrey Parker

Geoffrey Parker (0096049)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 927-5980
gparker@hiltonparker.com
*Attorney for Plaintiff Charles Young*